UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VICKIE S. MAGEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:16-CV-346-PPS-MGG |
| | ) |
| NANCY BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Vickie S. Magee appeals the Social Security Administration's decision to deny her application for disability insurance benefits and supplemental security income for the period of time from January 18, 2006 to March 12, 2007. An administrative law judge found that Magee was not disabled within the meaning of the Social Security Act during this time period. Magee raises a number of challenges to this determination including that the ALJ erred by not consulting a medical advisor to assist in developing the record when inferring the disability onset date. Because I agree that the ALJ failed to adhere to an applicable Social Security Ruling and sufficiently develop the record so as to infer the disability onset date, I will reverse the ALJ's decision and remand on this issue.

## BACKGROUND

At the time of Magee's hearing before the ALJ on May 12, 2015, she was a 52-year-old woman who stood 5'3" tall and weighed 180 pounds. [DE 12 at 965.] After

1

graduating high school in 1980, she took some college courses, but otherwise worked full-time. [*Id.* at 966.] Until August 2001, Magee worked as an office manager and bookkeeper. [*Id.* at 73.] As a bookkeeper, she frequently lifted boxes of files and computers weighing 25 to 50 pounds and walked up and down stairs. [*Id.* at 198.] That job also required "a great deal of concentration and the ability to multi-task." [*Id.* at 204.]

In August 2001, Magee was involved in a car accident. Her car was hit from behind and her head snapped back against the headrest. [*Id.* at 269, 335.] She did not immediately seek medical attention, but developed increasing pain and dizziness two weeks later. [*Id.*] Magee has been unemployed since her accident. [*Id.* at 55.] In October 2001, Magee attempted to return to work, but was unable to perform any work activities. [*Id.* at 265-66.] Her employer advised her not to return to work. [*Id.*] Furthermore, Magee testified that she was undergoing several treatments and "never felt up to getting a job." [*Id.* at 55.] She says that she is disabled by neck and back pain, headaches, numbness in her arms, depression, and memory and concentration issues. [*Id.* at 970.]

MRIs taken in October and December 2001 showed evidence of change in normal spine curvature, disc bulge, and post-traumatic soft tissue changes. [*Id.* at 265, 269.] At this time, the motor functions in all extremities and gait appeared normal. [*Id.* at 265.] Magee's condition appears to have deteriorated over time, ultimately resulting in a finding of disability starting March 13, 2007. [*Id.* at 895-908.] What brings us here today

is the period of time leading up to that date during which Magee claims she was disabled, specifically January 18, 2006 to March 12, 2007. Unfortunately, the medical evidence from this time frame is lacking. During that period, Magee only saw a doctor twice. She consulted neurologist Dr. Richard Cristea in both May and November 2006. [*Id.* at 341-42.] Other than complaining of constant pain, she reported no new issues and said she felt well. [*Id.* at 335, 342.] Then, on March 13, 2007, Carl Hale, Psy.D. examined Magee and observed her gait to be slow and unstable. [*Id.* at 408.] Dr. Hale diagnosed a pain disorder due to psychological factors and a general medical condition with anxiety. [*Id.* at 411.] MRIs and an EMG taken in May 2007 demonstrated that Magee had degenerative and progressive symptoms consistent with carpal tunnel syndrome and lumbar spine issues. [*Id.* at 566.] The evidence, however, did not indicate the severity of Magee's spine pain. [*Id.*]

This case has a complicated procedural history. Magee filed the relevant application for disability benefits and supplemental security income on January 9, 2007 and alleged a disability onset date of January 18, 2006. ALJ Mary Ann Poulose issued a partially favorable decision on June 25, 2009, finding claimant disabled and awarding benefits beginning on March 13, 2007, but not from the alleged onset date. [*Id.* at 555.] Magee then requested review by the Appeals Council and was denied. [*Id.*] She then appealed to this Court and Judge DeGuilio remanded the case for further proceedings and ordered the ALJ to consider the claimant's moderate limitations of concentration, persistence, and pace. [*Id.* at 597.] Following Judge DeGuilio's Order, the Appeals

3

Council vacated the June 25, 2009 decision with respect to the period between January 18, 2006 and March 12, 2007, but kept the finding that Magee was disabled as of March 13, 2007, and remanded the case for further proceedings. [*Id.*] ALJ Scales held a hearing on January 8, 2013 and issued a decision on January 25, 2013 finding that Magee was not disabled during the relevant period. [*Id.* at 620.] On August 25, 2014, the Appeals Council once again remanded ALJ Scales' decision due to inadequate rationale for the ALJ's credibility finding. [*Id.* at 634.]

ALJ Scales then held a third hearing and heard testimony from the claimant, a psychological expert, and a vocational expert. Magee testified that her most significant health issues during the period of January 2006 to March 2007 were her neck and back pain, which felt like "somebody was sticking hot nails in [her] neck," and depression. [*Id.* at 970-71.] She also said she had pain radiating up her head from her neck and daily headaches that lasted from two hours to three days and felt like "[her] skull was being crushed." [*Id.* at 971.] Magee explained that these headaches caused her to spend hours lying down each afternoon and prevented her from doing household activities. [*Id.* at 972.] She also said that difficulties with her vision made her unable to drive. [*Id.* at 974.] Magee further testified that she had shooting pain down her arms and hand pain and numbness. [*Id.* at 976.] Without control of her hands, she said she could not independently do such activities as writing, cooking, or cleaning. [*Id.* at 977-79.] Furthermore, Magee testified that she had memory and concentration impairments that,

4

in combination with her physical symptoms, would have prevented her from returning to work as a bookkeeper in 2006. [*Id.* at 981-82.]

The psychological expert, Michael Rabin, Ph.D., opined that Magee's depression moderately limited her social functioning, concentration, persistence, and pace. [*Id.* at 995.] He recommended that she not deal with the general public but otherwise found no restrictions on her ability to follow instructions, make simple work decisions, or deal with supervisors and co-workers. [*Id.* at 997.] Dr. Rabin testified that, despite her depression, Magee would have been able to engage in high-level work in 2006. [*Id.*]

After the hearing, the ALJ issued an unfavorable decision denying benefits from January 18, 2006 to March 12, 2007. [*Id.* at 555-72.] At Step One of the five-step disability evaluation process, she found that Magee met the insured status requirements of the Social Security Act and did not engage in substantial gainful activity. [*Id.* at 558.] At Step Two, the ALJ found that Magee had the following severe impairments: degenerative disc disease, myofascial pain syndrome, bilateral carpal tunnel syndrome, and depression. [*Id.* at 559.] However, she determined at Step Three that Magee did not have an impairment or set of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*] At Step Four, the ALJ found that Magee had the residual functional capacity (RFC) to perform unskilled sedentary work, such as the work of a document preparer or final assembler. [*Id.* at 568, 571.]

In reaching her conclusion, the ALJ found that the objective medical record did not support the claimant's allegations of chronic pain and extremely limited activities of daily living. [*Id.* at 565.] The ALJ's opinion relies on the fact that Magee did not report frequent, severe pain during her visits with Dr. Cristea during the relevant time period; instead, the treatment notes indicated that she felt well. [*Id.*] The ALJ adopted the opinion of Dr. Rabin and found that Magee was capable of performing a high level of unskilled work. [*Id.* at 568.]

## DISCUSSION

In evaluating Magee's arguments as to how the ALJ erred, I must keep in mind that judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I cannot reweigh the evidence or substitute my judgment for the ALJ's, but I must decide whether the ALJ's onset date is supported by substantial evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1279 (7th Cir. 2004).

Magee raises three issues in her appeal, but I will focus on the first argument: whether the ALJ erred in not consulting a medical expert when determining the disability onset date? [DE 18 at 11.] Recall that the Commissioner previously decided that Magee was disabled beginning March 13, 2007. [DE 12 at 35.] Magee appeals for

6

full benefits for the period between her alleged onset date, January 18, 2006, and the day before the Commissioner's chosen onset date, March 12, 2007.

"[T]he onset date is critical . . . . [I]t is essential that [it] be correctly established and supported by the evidence." SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983); *see also Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987). For disabilities of a traumatic origin, it is often easy to determine the onset date because the injury results from an event marked in time such as a car accident. The onset date of a progressively debilitating condition is more difficult to determine. In these cases, SSR 83-20 prescribes the analysis the ALJ must use to infer an onset date. The ALJ must consider (1) the claimant's alleged onset date, (2) the date the claimant stopped working, and (3) the medical evidence of the disability's onset. *Id.* at *4-6. Even though the ALJ considers all the factors, the medical evidence is "the primary element in the onset determination" and the chosen onset date can never be inconsistent with it. *Id.*; *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999).

If an onset date cannot be inferred from the medical evidence, SSR 83-20 requires the ALJ to call on the services of a medical advisor to help make the necessary inferences. *Lichter v. Bowen*, 814 F.2d at 434 (7th Cir. 1987); *Gutka v. Apfel*, 54 F. Supp. 2d 783, 787 (N.D. Ill. 1999). According to SSR 83-20:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to

7

> have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, *must* have a legitimate medical basis. *At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.* If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, 1983 WL 31249 at *6-7 (Jan. 1, 1983) (emphasis added). An ALJ need not to consult a medical expert when the claimant's medical history is complete and unambiguously fixes an onset date. *Henderson ex rel. Henderson*, 179 F.3d at 513 (citing *Pugh v. Bowen*, 870 F.2d 1271, 1278 n.9 (7th Cir. 1989)). But "where the evidence is at very least ambiguous regarding . . . the onset of [the claimant's] disability . . . the ALJ should turn to SSR 83-20 to make the necessary retroactive findings." *Smith v. Colvin*, 208 F. Supp. 3d 931, 940 (N.D. Ind. 2016) (internal quotation marks omitted). This includes calling a medical advisor. *Id.*

So the issue in this case is whether the medical evidence was complete and sufficient enough to support an onset date of March 13, 2007 without consulting a medical expert. I find that it was not. In her opinion, the ALJ found that Magee was not disabled at any time during the period of January 18, 2006 to March 12, 2007, affirming the onset date of March 13, 2007. Recall that it was on March 13, 2007 that Magee underwent a psychological consultative examination at the request of the Administration after having only seen a doctor *twice* during the almost fourteen-month period leading up to that date. What I find troubling, however, is that the ALJ asserts

8

throughout her opinion that Magee's condition is degenerative, DE 12 at 566, 568, which means that she had symptoms and potentially was disabled for at least some of the time leading up to March 13, 2007. Yet, the ALJ found Magee was not disabled during *any* of this time due to the lack of objective medical evidence. [*Id.* at 568.] Without this evidence, the ALJ was tasked with the difficult responsibility of determining if and when Magee's symptoms, which began years prior, had degenerated to such a point that she was legally disabled but undiagnosed. The issue here, is what the ALJ did, or did not do, in discharging this responsibility.

Given the facts of this case and the analysis mandated by SSR 83-20, the ALJ should have consulted a medical advisor because the record did not overwhelmingly support a March 13, 2007 onset date. Magee attended a psychological consultative exam with Dr. Carl Hale, Psy.D. on March 13, 2007 and was diagnosed with a pain disorder due to psychological factors and a general medical condition. [*Id.* at 407-12.] Her gait was slow and unstable. [*Id.*] Dr. Hale also found moderate limitations on Magee's concentration, pace, and ability to understand instructions. [*Id.*] When Magee's physical limitations were finally reassessed in July 2007 by Dr. Cristea, Dr. Cristea concluded that Magee was disabled and a May 2007 report noted that Magee's symptoms began about six months prior. [*Id.* at 38.] Because Dr. Hale examined only Magee's psychological symptoms, there is really no evidence of her physical condition until the May 2007 MRIs and EMG, meaning that the only physical evidence upon

which the ALJ could have relied indicated that Magee's condition had deteriorated months earlier, potentially before March 13, 2007.

Because the crucial date is the date of onset and not the date of diagnosis, the ALJ was required to infer when Magee's physical symptoms became disabling. It is these very occasions when SSR 83-20 mandates consultation with a medical advisor. *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1040 (N.D. Ill. 2007) ("[T]he lack of medical records that support an earlier date should not excuse the ALJ from applying the SSR 83-20 analysis.") The ALJ also has a duty to clarify and develop the medical record by ordering consultative examinations if need be. *See Clayborne v. Astrue*, 2007 WL 6123191 (N.D. Ill. 2007); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). While there was a psychological expert present at the hearing, he only could speak to Magee's mental limitations and could not opine on her pain symptoms. [DE 12 at 1016.] After the hearing, the ALJ ordered Magee to undergo a physical consultative examination with Dr. R. Jao. [*Id.* at 569.] This shows that the ALJ realized there was an evidentiary gap in the record. However, she ultimately gave Dr. Jao's opinion no weight in the decision because it discussed only Magee's current limitations and did not inform the ALJ on the claimant's limitations during the relevant period. [*Id.*]

The ALJ also disregarded third-party reports on Magee's condition in 2006. [*Id.*] Thus, she was left with the same inadequate information she had before ordering Magee's consultation with Dr. Jao. This is the point that she should have ordered a second consultative exam and made it clear that it was for the period between January

18, 2006 to March 12, 2007.  A medical advisor would have helped complete the record.  *See Smith v. Colvin*, 208 F. Supp. 3d at 941.  Instead, she was left with an incomplete and underdeveloped record that she used to ultimately conclude there was no objective medical evidence supporting a finding of disability during the relevant time period.  The ALJ should have done more to satisfy her duty to complete the record.

In addition, the ALJ ignored the pre-2006 evidence that supports the possibility of an earlier onset date.  Well before 2006, Magee reported neck and back pain, occipital head pain, dizziness, and numbness in her extremities.  [DE 12 at 335.]  MRIs taken after the accident showed that Magee had disc bulge and soft tissue changes.  [*Id.* at 265, 269.]  The next tests done in May 2007 showed disc herniation, stenosis, and other degenerative disc and ligamentous changes.  [*Id.* at 456-58.]  These images establish an upward trend in the severity of Magee's condition.  *See Barnett v. Barnhart*, 381 F.3d at 669.  In fact, the ALJ acknowledged that the claimant had progressive and degenerative symptoms that "did not develop in the one to two days after March 12, 2007."  [DE 12 at 565-66.]  The claimant's degenerative disc disease and carpal tunnel syndrome were present during the contested period, although there is nothing in the record that indicates the severity of her condition.  The ALJ says that the lack of medical evidence proves that Magee was not disabled during this period.  [*Id.* at 566.]  But it seems that the ALJ could have come to a different conclusion if she had applied the SSR 83-20 analysis and consulted a medical advisor to complete the record.

11

The Commissioner argues that the ALJ accurately interpreted the medical evidence and did not have to consult a medical advisor because claimant's argument that this would result in an earlier onset date was merely speculative. In addition, the Commissioner argues that Magee's symptoms could not have been disabling because she only saw a doctor twice during the relevant time period and did not report the level of pain she is now claiming to have had experienced. [DE 19 at 7.] However, Magee claims that she did not seek more medical attention because she could not afford the treatment. [DE 18 at 13.] Even if we were to interpret this to mean that her symptoms were not disabling at that time, there is simply no medical evidence on record between her November 2006 visit with Dr. Cristea to her March 13, 2007 exam. The lack of evidence and the degenerative nature of her symptoms make it entirely possible that Magee was disabled during some period of time during those months.

Simply put, it is contradictory for the ALJ to note the degenerative nature of Magee's condition and order what turned out to be an unusable consultative medical examination, and then claim that there was no evidence to support the inference of an onset date before March 13, 2007.

I recognize that this is a demanding case. Trying to determine what someone's condition was nearly a decade ago is a difficult undertaking. Nonetheless, the ALJ had a duty to develop the record regarding Magee's condition during the relevant time period because the onset of her disability was unclear. The ALJ failed to adequately do so. It is therefore necessary to remand on this issue to allow the agency to further

develop the record. Because a remand is already necessary, I will not address Magee's remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

**SO ORDERED**.

ENTERED: June 21, 2017.

s/ Philip P. Simon<br>
**PHILIP P. SIMON, JUDGE**<br>
**UNITED STATES DISTRICT COURT**